IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

SAMANTHA WARD, an individual

Plaintiff,

v.

MORROW COUNTY HEALTH DISTRICT, a local government body, EMILY ROBERTS REYNOLDS, an individual, and OREGON AFSCME COUNCIL 75, a nonprofit entity,

Defendants.

Case No. 2:25-cv-00734-HL

**OPINION AND ORDER**

---

HALLMAN, United States Magistrate Judge:

Plaintiff Samantha Ward brings the present action against Defendants Morrow County Health District ("MCHD"), her former employer; MCHD CEO Emily Roberts Reynolds; and Oregon American Federation of State, County and Municipal Employees Council 75 ("AFSCME"). This matter now comes before the Court on AFSCME's Motion to Dismiss for

failure to state a claim. ECF 43.[1] For the reasons discussed below, AFSCME's motion is GRANTED. Plaintiff's claims against AFSCME are dismissed WITHOUT PREJUDICE, and Plaintiff has thirty (30) days to file an amended complaint if she believes she can cure the deficiencies identified herein.

## DISCUSSION

### I. Background

For the purposes of this motion, the Court accepts as true all well-pleaded material facts alleged in the complaint, *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018), and recites those facts relevant to Plaintiff's claims against AFSCME here.

Plaintiff brings this action after she was terminated by MCHD from her paramedic lead position at the Irrigon, Oregon station, alleging that she was fired because she was suing her former employer—the Benton County Fire District No. 1 ("BCFD No. 1")—for gender discrimination. First Amended Complaint ("FAC") ¶¶ 10-78, ECF 33. MCHD hired Plaintiff as a paramedic on or about March 18, 2024. *Id.* at ¶ 10. During Plaintiff's employment with MCHD, the paramedics were not unionized, although other MCHD staff were represented by AFSCME. *Id.* at ¶ 19. Discussions regarding paramedics unionizing were ongoing and involved consideration of alternative union representation, including the International Association of Fire Fighters ("IAFF"), of which Plaintiff was a member. *Id.* at ¶¶ 1, 20.

In late November 2024, Plaintiff contacted AFSCME union leader Kimberlee Roberts regarding questions colleagues had about AFSCME membership and to connect her colleagues with Haley Wolford Davis, AFSCME's bargaining unit representative. *Id.* at ¶ 21. Roberts then met with the AFSCME Local's president, Jesse Reynen, regarding Plaintiff's communication. *Id.*

[1] This Court concludes that this matter can be resolved without oral argument.

at ¶¶ 21, 29. In December 2024, Plaintiff attended a meeting in which Emily Roberts Reynolds, MCHD's CEO, indicated that AFSCME intended to incorporate MCHD paramedics into AFSCME's existing union contract with MCHD and that MCHD did not plan to oppose the incorporation. *Id.* at ¶ 22. Reynolds advised Plaintiff not to express a preference for which union to join based on Plaintiff's paramedic lead position. *Id.*

At the end of December 2024, Plaintiff received multiple gender discrimination complaints about a paramedic assigned to the Irrigon station and reported those complaints up the chain of command, with MCHD thereafter initiating an investigation. *Id.* at ¶¶ 24-27. Plaintiff was informed that her participation in the investigation was protected activity and attended a Zoom interview on January 10, 2025. *Id.* at ¶¶ 38-39. During the interview, Plaintiff noted that Reynen was within earshot and paused the conversation until his exit. *Id.* at ¶ 39.

Throughout January 2025, MCHD paramedics continued discussing whether to join AFSCME. *Id.* at ¶ 28. During that time, Reynen was communicating with AFSCME about the paramedics joining the union and told Wolford Davis that Plaintiff would not join AFSCME because she believed IAFF was the better option and had been discussing the merits of the options with other MCHD employees. *Id.* at ¶¶ 29-30. On or about January 4, 2025, Plaintiff learned about an email Reynen sent to Reynolds in which he referenced Plaintiff's lawsuit against BCFD No. 1 and wrote "I would be careful of her" and "she seems sue happy." *Id.* at ¶¶ 31-33. Days later, after learning about Reynen's email, Roberts contacted AFSCME representative Darren Holden, who indicated that Reynen's email was a fireable offense. *Id.* at ¶ 37.

On January 29, 2025, MCHD terminated Plaintiff at Reynolds' direction. *Id.* at ¶ 45. Reynolds contended that Plaintiff's termination was due to her conduct regarding AFSCME. *Id.*

at ¶ 76. At some point between January 24 and January 29, 2025, Wolford Davis spoke with Reynolds about MCHD's paramedics not yet voting to join AFSCME and expressed that Plaintiff was resistant to joining AFSCME, preferring IAFF. *Id.* at ¶ 44. In a memorandum dated January 30, 2025, Reynolds recounted Wolford Davis sharing with her that MCHD employees had reported that Plaintiff continued engaging staff in dialogue regarding AFSCME, discouraged staff from paying dues, encouraged paramedics to not consider joining AFSCME, and made defamatory comments about Wolford Davis personally. *Id.* at ¶ 73. Reynolds recounted Wolford Davis explaining that AFSCME considered Plaintiff's behavior unfair labor practices due to her paramedic lead position and that staff reported fearing Plaintiff. *Id.* Plaintiff had previously been instructed not to engage in discussions with staff regarding unionization. *Id.* at ¶ 77. The memorandum further states that Reynolds met with MCHD's human resources director and compliance officer to discuss Wolford Davis' concerns, deemed those concerns credible based on Plaintiff's past admission of "engaging in inappropriate conversations with AFSCME covered employees regarding AFSCME representation[,]" and decided to terminate Plaintiff. *Id.* at ¶ 76.

Plaintiff filed the present action on May 5, 2025. *Id.* at ¶ 65. Later that month, Wolford Davis emailed, among others, AFSCME Executive Director Joe Baessler and stated that Reynen had not emailed Reynolds regarding Plaintiff's lawsuit against BCFD No. 1 and had instead spoken about Plaintiff's anti-AFSCME behavior with Wolford Davis, who then spoke to Reynolds. *Id.* at ¶ 66. Wolford Davis wrote in a separate email to AFSCME 75 President Fred Yungbluth Jr. that Plaintiff had talked specifically to paramedics about how they should unionize with a different union and talked with AFSCME employees about leaving AFSCME for another union. *Id.* at ¶ 67. On May 23, 2025, Baessler, Yungbluth, and Reynen signed and sent an email, drafted in part by Wolford Davis, presenting AFSCME's version of the facts underlying

Plaintiff's lawsuit against MCHD.[2] *Id.* at ¶ 68. That email stated that Plaintiff was "an unrepresented supervisor and not a union member" and that MCHD's decision to terminate Plaintiff "was not made in coordination with, or at the request of, any AFSCME official[.]" *Id.* at ¶¶ 69, 71.

In the FAC, Plaintiff brings a claim against AFSCME for a violation of ORS § 659A.030, alleging that AFSCME aided, incited, compelled, or coerced Reynolds and MCHD into terminating Plaintiff. *Id.* at ¶¶ 109-114. Plaintiff also brings a claim under 42 U.S.C. § 1983 against AFSCME and Reynolds alleging they conspired to deprive Plaintiff of her First Amendment rights to (1) sue BCFD No. 1, (2) participate in a sexual harassment investigation against a MCHD paramedic, and (3) express her views regarding MCHD paramedic unionization. *Id.* at ¶¶ 129-131.

## II. Standard of Review[3]

A Fed. R. Civ. P. ("Rule") 12(b)(6) motion tests whether there is a cognizable legal theory or sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a Rule 12(b)(6) motion, "the complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[2] AFSCME was not initially a party to this action. ECF 1.

[3] Plaintiff relies on *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002), for the proposition that her employment discrimination claim should be analyzed under a relaxed pleading standard. Pl.'s Response 3-4, ECF 46. Plaintiff's reliance on *Swierkiewicz* is misplaced. The Supreme Court has explained that *Swierkiewicz* narrowly addressed the lower court's "impermissibl[e] appli[cation] . . . [of] a heightened pleading requirement by insisting that [the plaintiff] allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, AFSCME only argues that Plaintiff has failed to state a claim for relief.

(quoting *Twombly*, 550 U.S. at 555). A Rule 12(b)(6) motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

When evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the plaintiff. *Davidson*, 889 F.3d at 971 (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010)); *Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 969 (9th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

If a complaint fails to state a plausible claim, "[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).

## III. Analysis

### A. Conspiracy to Violate Ms. Ward's First Amendment Freedom of Speech & Association Under 42 U.S.C. § 1983 (Ninth Claim)

AFSCME argues that Plaintiff has failed to plead facts that would establish its liability under *Monell* and failed to state facts alleging a conspiracy to violate her civil rights under § 1983. Def. Mot. Dismiss 5, 8-9, ECF 43. This Court agrees with both arguments.

### 1. *Monell* Liability

Under the Supreme Court's holding in *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978), an entity may be held liable under 42 U.S.C. § 1983 when a plaintiff demonstrates that the constitutional violation complained of was caused by a "policy or custom." 436 U.S. at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted; brackets in original). The requirements of *Monell* apply to private entities sued under § 1983. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012).

A plaintiff may establish *Monell* liability in three circumstances: (1) a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity"; (2) the individual who committed the constitutional violation was an official with "final policy-making authority and . . . the challenged action itself thus constituted an act of official governmental policy"; or (3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citation modified; cleaned up). "[R]igorous standards of culpability and causation must be applied to ensure that the [entity] is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). "Where a court fails to

adhere to rigorous requirements of culpability and causation, [*Monell*] liability collapses into *respondeat superior* liability."[4] *Id.* at 415.

Plaintiff's only explicit allegation regarding AFSCME's liability is that it employed Wolford Davis. FAC ¶ 3, ECF 33. In her Response, Plaintiff argues that she pleaded facts upon which *Monell* liability inures to AFSCME under the "ratification" and "final policymaker" theories. Pl.'s Response 5-7, ECF 46.

"To show ratification, a plaintiff must show that the authorized policymakers approve a subordinate's decision and the basis for it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation omitted; cleaned up). Liability attaches to the entity only with "evidence of a conscious, affirmative choice" by the final policy maker. *Gillette*, 979 F.2d at 1347. A policymaker's knowledge of or "mere refusal to overrule a subordinate's completed act" is not enough to show ratification. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999). "To hold [entities] liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law[.]" *Gillette*, 979 F.2d at 1348.

Plaintiff alleges that AFSCME was aware of Reynen's email to Reynolds and Wolford Davis' conversation with Reynolds regarding Plaintiff but did not discipline Reynen and instead issued a letter stating that MCHD's termination of Plaintiff was "not made in coordination with . . . any AFSCME official." FAC ¶¶ 37, 67-68, 71, ECF 33. Plaintiff's allegations do not show that AFSCME approved either Reynen's or Wolford Davis' conduct. The allegations do not offer evidence of a conscious affirmative choice on AFSCME's part. Rather, the allegations show

---

[4] Defendant argues that Plaintiff cannot impute liability for Reynen's actions to AFSCME under even a theory of respondeat superior. Def.'s Mot. Dismiss 4-5, ECF 43. Plaintiff does not argue otherwise.

merely a failure to overrule Reynen's and Wolford Davis' discretionary acts, which is not enough for *Monell* liability to inure to AFSCME through a ratification theory.

*Monell* liability also attaches to an entity under a final policymaker theory "where the decisionmaker possesses final authority to establish . . . policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to . . . liability based on an exercise of that discretion." *Id.* at 481-82. Rather, "[t]he official must also be responsible for establishing final government policy respecting such activity before the [entity] can be held liable." *Id.* at 482-83.

Plaintiff asserts that it has alleged that AFSCME gave Wolford Davis and Reynen "unfettered discretion to work with MCHD/Reynolds to fire [Plaintiff,]" and that the FAC "contains no allegation (and AFSCME advances none in support) . . . that AFSCME forbade [Reynen] or [Wolford Davis] from any of the acts they took[.]" Pl.'s Response 7, ECF 46. But the facts pleaded in the FAC do not support that conclusion. Rather, Plaintiff's allegations show an AFSCME official suggesting potential punishment for Reynen and Wolford Davis giving reports to her superiors. FAC ¶¶ 37, 66-67, ECF 33. These allegations are insufficient to allege *Monell* liability for AFSCME through a final policymaker theory.

For those reasons, Plaintiff has failed to plead facts that would demonstrate AFSCME's liability under *Monell*.

**2. Failure to state a claim for conspiracy.**

To prevail on a section 1983 conspiracy claim involving state and private parties, a plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540-41 (9th Cir. 1989)

(citations omitted; cleaned up). "To be liable, each participant in the conspiracy need not know the details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (citation and internal quotation marks omitted). "The agreement need not be overt," but instead "may be inferred on the basis of circumstantial evidence such as the actions of the defendants." *Id.* (citation and internal quotation marks omitted). A plaintiff "must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citation omitted); *see also Lacey v. Maricopa County*, 693 F.3d 896, 937 (9th Cir. 2012) ("conclusory conspiracy allegations" insufficient to implicate the defendant where they "do not define the scope of any conspiracy involving [the defendant], what role he had, or when or how the conspiracy operated").

Here, Plaintiff alleges that (1) Reynen emailed Reynolds referencing Plaintiff's gender discrimination lawsuit against BCFD No. 1, calling Plaintiff "sue happy," and writing that he "would be careful of her"; (2) Wolford Davis spoke with Reynolds regarding Plaintiff's resistance to MCHD paramedics joining AFSCME, reporting Plaintiff was engaging staff in dialogue regarding AFSCME, discouraging staff from paying dues, and encouraging MCHD paramedics to not consider joining AFSCME and informed Reynolds that AFSCME considered Plaintiff's behavior unfair labor practices; and (3) soon after Wolford Davis spoke with Reynolds the decision was made to terminate Plaintiff. FAC ¶¶ 31-33, 44, 73, 76, ECF 33.

Plaintiff's allegations are insufficient to state a claim that AFSCME conspired with Reynolds to violate Plaintiff's free-speech rights. Plaintiff does not plead any facts demonstrating AFSCME's objective in Reynen sending the email to Reynolds or AFSCME's

objective in Wolford Davis speaking with Reynolds.[5] Absent such allegations, it is not plausible to conclude that the defendants shared a common objective. Further, Plaintiff does not plead allegations as to the conspiracy's specifics, such as its scope, AFSCME's role, or how the conspiracy operated. Absent such specifics, the FAC does not establish a meeting of the minds between AFSCME and Reynolds to violate Plaintiff's constitutional rights. Plaintiff does not sufficiently allege a conspiracy to violate her constitutional rights under 42 U.S.C. § 1983 and AFSCME's motion to dismiss is granted as to that claim.

**B. Aiding and Abetting Under ORS § 659A.030 (sixth claim)**

AFSCME argues that Plaintiff has failed to plead facts establishing that it is a proper defendant and that it aided or abetted any unlawful employment practice under ORS § 659A.030. Def. Mot. Dismiss 4-5, 7-8, ECF 43. This Court agrees with AFSCME's latter contention.[6]

Under ORS § 659A.030(1)(h), it is unlawful "[f]or any person, whether an employer or an employee, to aid, abet, incite, compel or coerce" employment practices that are unlawful under ORS Chapter 659A. The statute applies to anyone, not just employers and employees. *Hernandez v. Catholic Health Initiatives*, 311 Or. App. 70, 80-81 (2021). "One who aids or abets

---

[5] In her Response, Plaintiff states that she alleged in the FAC that "AFSCME told . . . Reynolds of [Plaintiff's] anti-AFSCME speech and did so with the goal of getting [Plaintiff] fired[,]" and that the allegations regarding Reynen "make clear that AFSCME and MCHD/Reynolds shared the same common objective of getting [Plaintiff] fired[.]" Pl.'s Response 7, ECF 46. However, such allegations are not in the paragraphs Plaintiff cites or elsewhere in the FAC.

[6] AFSCME's first argument – which is that it is not a "proper defendant" because there are no allegations that it employed Reynen or that he is subject to the direction and control of Oregon AFSCME, Def. Mot. Dismiss 4-5 – is unclear and undeveloped. AFSCME fails to explicitly identify the "proper defendant" or why the failure to name the proper defendant should result in the dismissal of AFSCME. Further, Plaintiff is not alleging liability based solely on Reynen's actions, but on AFSCME's role in Plaintiff's termination. Finally, even if AFSCME is correct that an independently elected union officer is not subject to the direction and control of Oregon AFSCME, that factual assertion is not clear from the complaint and cannot be resolved on the present motion.

is one who assists another to commit an act." *Allison v. Dolich*, 321 Or. App. 721, 726 (2022) (citation omitted). Further, "the legislature intended to require knowledge for liability" for aiding and abetting under ORS § 659A.030(1)(h). *Mitchell v. Bureau of Labor & Indus.*, 349 Or. App. 520, 530, *opinion adhered to as modified on reconsideration*, 352 Or. App. 122 (2026).[7]

Here, Plaintiff alleges AFSCME violated the statute by "aiding, inciting, compelling, and/or coercing Defendants MCHD and Reynolds into terminating [Plaintiff's] employment for" among other reasons, "participating in the above-referenced gender discrimination investigation and/or for having previously sued her former employer for gender discrimination." FAC ¶ 112, ECF 33. Plaintiff explains in the Response that the claim refers to Reynen's email to Reynolds in which he referred to Plaintiff's lawsuit against BCFD No. 1, called Plaintiff "sue happy," and told Reynolds he would be careful of Plaintiff,[8] which AFSCME's representative, Holden, called a "fireable offense."[9] Pl.'s Response 8-9, ECF 46.

Plaintiff's aiding and abetting claim falls short for two reasons. First, Plaintiff does not allege that when Reynen emailed Reynolds, AFSCME was aware that Reynolds and MCHD would terminate Plaintiff's employment. *See Mitchell*, 349 Or. App. at 525 (explaining that under any contemporaneous common usage or legal definition of the terms, "a person must be aware of the underlying conduct in order to aid, abet, incite, compel or coerce it.").

---

[7] When interpreting state laws, "in the absence of convincing evidence that the high court of the state would decide differently . . . a federal court is obligated to follow the decisions of the state's intermediate courts." *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (citations omitted).

[8] Plaintiff also states in the Response that Reynen deleted the email but does not so allege in the FAC. Pl.'s Response 9, ECF 46. Accordingly, this Court does not consider that allegation in the context of this Rule 12(b)(6) motion.

[9] It is not clear from the FAC what conduct or to whom specifically Holden's comment was directed.

Second, even if Plaintiff had adequately alleged Reynen's awareness that Plaintiff could or would be terminated, Plaintiff does not allege facts sufficient to support a theory that AFSCME, through Reynen, aided, abetted, incited, compelled, or coerced Reynolds and MCHD in Plaintiff's termination. As noted, to aid and abet, one "assists another to commit an act." *Allison*, 321 Or. App. at 726 (2022). Plaintiff does not plead any facts that could be construed as AFSCME assisting Reynolds and MCHD in Plaintiff's termination, nor does she argue that Reynen's conduct constituted aiding or abetting.

Rather, Plaintiff argues that she has alleged facts sufficient to show that Reynen's acts compelled, incited, or coerced Reynolds and MCHD into firing her. In *Mitchell*, the Oregon Court of Appeals explained that "'incite' means 'to move to action; to stir up; to spur or urge on,' and the legal definition is 'nearly synonymous with 'abet[.]'" *Id.* at 527 (citations omitted; cleaned up). "[T]he definitions of both 'compel' and 'coerce' include 'to force,' 'to drive or urge with force,' and 'to compel to compliance[.]'" *Id.* Based on those definitions, AFSCME could not reasonably be said to have incited, compelled, or coerced Reynolds and MCHD to unlawfully terminate Plaintiff through Reynen's directive to be careful of Plaintiff, as Plaintiff alleges. Indeed, nothing in Reynen's email forced or compelled MCHD to take any particular employment action with respect to Plaintiff. Thus, Plaintiff does not sufficiently allege an aiding and abetting theory under ORS § 659A.030(1)(h) and AFSCME's motion to dismiss is granted as to that claim.

## IV. Leave to amend

AFSCME requests that the Court dismiss with prejudice the claims against it in the FAC, contending that Plaintiff cannot allege sufficient facts for either claim. Def.'s Mot. to Dismiss 9, ECF 43. Here, AFSCME has not demonstrated that granting Plaintiff leave to amend would be

futile, and Plaintiff will be given an opportunity to cure the defects in her claims against AFSCME, if she is able to do so.

**CONCLUSION**

For the foregoing reasons, AFSCME's motion to dismiss pursuant to Rule 12(b)(6), ECF 43, is GRANTED and the claims against AFSCME are dismissed WITHOUT PREJUDICE. Plaintiff has thirty days to file a Second Amended Complaint.

IT IS SO ORDERED.

DATED this 26 day of August, 2026.

ANDREW HALLMAN
United States Magistrate Judge